UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

CHARLES STROUCHLER, SARA
CAMPOS, by her next friend ANA
SIMARD, and AUDREY ROKAW, by her
next friend NINA PINSKY, individually
and on behalf of all persons similarly
situated,

          Plaintiffs,

  - against -

NIRAV SHAH, M.D., as Commissioner of
the New York State Department of Health,
and ELIZABETH BERLIN, as Executive
Deputy Commissioner of the New York
State Office of Temporary and Disability
Assistance, and ROBERT DOAR, as
Administrator of the New York City
Human Resources
Administration/Department of Social
Services,

          Defendants.

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/5/12

## OPINION AND ORDER

12 Civ. 3216 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

      On behalf of themselves and a putative class, Charles Strouchler, Sara Campos, and Audrey Rokaw have sued the Commissioner of the New York State Department of Health, in his official capacity ("the State") and the Administrator of the New York City Human Resources Administration, in his official capacity

1

("the City"). Plaintiffs are elderly and disabled recipients of 24-hour continuous home care services ("split-shift care"), administered by the State through its agent the City using Medicaid dollars. They allege that defendants have improperly sought to terminate their split-shift care – and the care of hundreds of other recipients – in violation of federal and state law and the federal Constitution.

On September 4, 2012, after a hearing and extensive briefing by the parties, I issued a preliminary injunction enjoining the City from reducing or terminating split-shift care of any current recipient for any one of five specific reasons, with limited exceptions.[1] My findings of fact and conclusions of law

---

[1] The injunction read as follows: "The City shall not reduce or terminate the split-shift care of any current recipient because: - the recipient needs only 'some' assistance; - the recipient's needs can be predicted or scheduled; - the recipient's only medical needs are turning and positioning; - there has been a change in the recipient's medical condition, unless the City submits to the recipient a declaration, signed by a physician who has personally examined the recipient, that details a material change in the patient's condition and certifies that because of the change the recipient is no longer eligible for split-shift care; or because - there has been a mistake in a previous diagnosis or assessment, unless the City submits to the recipient a declaration, signed by a supervising LMD, that details the mistake in the previous diagnosis and explains how it occurred.
At the same time that it sends any recipient a notice terminating or reducing care as a result of a previous mistake or change in medical condition, the City shall forward to plaintiffs' counsel a copy of the notice. The City shall redact from the copy any personal identifying information.
The State shall, within thirty days of this order, publicly issue written clarification regarding the proper interpretation and application of the regulation with respect to the availability of split-shift care for needs that are predicted and for patients whose only nighttime need is turning and positioning." Opinion and Order, 2012 WL 3838159, at *14-15 (S.D.N.Y. Sept. 4, 2012) ("*Strouchler I*").

from that opinion are fully incorporated into this opinion and familiarity with those findings and conclusions is assumed.

> Plaintiffs now move for certification of the following class:
>
> All New York City Medicaid recipients of continuous personal care services who are threatened with reduction or discontinuance of these services, or whose care has been reduced or discontinued at any time since January 1, 2011, because the City Defendant has determined or will determine that they do not meet the **medical** criteria for these services.[2]

The City raises two general objections to this class definition. *First*, it argues, the proposed class definition is too broad. There are two elements to this overbreadth. The first is that the definition "covers individuals who have not been injured at all . . . . Recipients whose services are *lawfully* reduced obviously do not

---

[2] Plaintiffs' Reply Memorandum of Law in Support of Class Certification ("Pl. Rep. Mem.") at 1. Plaintiffs initially sought to certify a class with the same definition, minus the word "medical." The amended proposed class definition was meant to assuage some of the concerns raised by defendants regarding the over-breadth of the class definition.
   *See also* Plaintiffs' Memorandum of Law in Support of Motion for Class Certification ("Pl. Mem."), City Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("City Mem."), and State Defendant's Memorandum of Law in Opposition to Motion for Class Certification ("State Mem.").

3

have a viable legal claim against any Defendant. In spite of this, Plaintiffs' proposed class definition encompasses them."[3] The second element of the overbreadth relates to the hundreds of recipients whom the City notified that their services would be reduced, who then appealed the City's decision, and whose appeals were successful. The City argues that these people have not suffered an injury – because most of them received "aid continuing" and retained their services – and therefore should not be part of the class.[4] The City's proposed solution to the overly broad definition is to include in the class "only those Medicaid recipients whose split-shift services have in fact been reduced or terminated for a reason that Plaintiffs allege is unlawful."[5] The City next argues that if the Court were to use this narrower class definition, the class would be insufficiently numerous to satisfy the requirement of Federal Rule of Civil Procedure 23(a).[6]

In order to determine whether a preliminary injunction was appropriate, I was required to first examine the likelihood that a class would

---

[3] City Mem. at 3.

[4] *Id.* at 4. The State makes a similar objection regarding the breadth of the proposed class definition. *See* State Mem. at 11-14.

[5] City Mem. at 5-6.

[6] *See id.* at 5-7.

ultimately be certified. As I explained:

> Given that there are hundreds of recipients of split-shift care, numerosity is satisfied. Although the facts of each class member's diagnoses and evaluations are unique to that individual, the following facts regarding the centralization of the program are likely sufficient to satisfy the commonality requirement. All putative class members are recipients of medical care administered by the City pursuant to Medicaid; their eligibility for the care is determined by a set of doctors working in one department; that department is run by one individual, Dr. Anita Aisner, who is personally supervising the review of "all split-shift cases"; Dr. Aisner told her staff, in writing, that "I have continued concerns for those [doctors] who have not forwarded any and/or very few [split-shift] reductions to me for review as instructed," and that "this is one indicator of your performance"; over ninety-seven percent of the decisions by the doctors in that department to reduce or terminate putative class members' benefits have been rejected as improper by ALJs. Given this set of facts, it is highly likely that plaintiffs will be able to establish commonality.
>
> The three named plaintiffs were threatened with reductions for precisely the same common reasons (turning and positioning, some versus total assistance, and mistake) that the City relied upon in reducing the benefits of dozens of other putative class members. As a result, they likely satisfy the typicality prong. Plaintiffs are represented by experienced and highly qualified counsel and there is no reason to think that the named plaintiffs are inadequate representatives of the class; adequacy is therefore established. Finally, it is likely that plaintiffs claims satisfy Rule 23(b)(2), which requires that plaintiffs establish that defendants acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.[7]

---

[7] *Strouchler I*, 2012 WL 3838159, at *9 (citations omitted).

While nothing in the class certification briefing causes me to revisit these preliminary conclusions, defendants' concerns regarding the scope of the class definition have some merit. Therefore, I will grant certification of the following class:

> All New York City Medicaid recipients of continuous personal care services who, at any time since January 1, 2011, have been threatened with unlawful reduction or discontinuance of these services or whose care has been unlawfully reduced or discontinued because the City Defendant has determined that they do not meet the medical criteria for these services.[8]

The addition of the words "unlawful" and "unlawfully" fully addresses defendants' legitimate concerns regarding overbreadth because this class does not include people whose services were lawfully reduced or terminated. As I explained in the preliminary injunction order, the City's threat of unlawful reduction of services may well have caused irreparable harm even if, as a general matter, beneficiaries received aid during the pendency of their appeals.[9] Therefore, the

---

[8] Defendants have been enjoined from improperly seeking to reduce or discontinue the medical care of current recipients on specific grounds addressed in the preliminary injunction decision. Neither defendant has appealed that decision. Therefore, I need not include in the class individuals who "will be" subject to those acts. Any failure to comply with the terms of the injunction risks the punishment of contempt.

[9] *See Strouchler I*, 2012 WL 3838159, at *10-12.

City's proposed class of only people who have actually lost medical care is inappropriately narrow. Because the definition that I adopt includes the hundreds of people who were improperly threatened with reductions in care, it is sufficiently numerous to satisfy Rule 23(a).

The State argues that the named plaintiffs cannot represent the class because the class would include people who were terminated (or threatened with termination) on grounds different from those upon which the City sought to reduce named plaintiffs' services. For example, unlike named plaintiffs, some class members were terminated because "(1) their temporary medical condition that resulted in a need for such services has ended; . . . . (5) they are medically unstable; or (6) they are not self-directing."[10] The State's concerns do not make class certification inappropriate.

The Complaint alleges that the City "has begun a process of re-evaluating every case in which there has been an authorization of split-shift personal care services in order to reduce and/or eliminate the City's 24-hour caseload."[11] It alleges that this process constitutes "a policy and practice of arbitrarily and

---

[10] State Mem. at 13.

[11] Amended Complaint ¶ 6.

irrationally reducing or discontinuing Plaintiffs' split-shift home care services."[12] The fact that ninety-seven percent of the City's decisions have been reversed by administrative law judges lends powerful support to these allegations. The reasons that the City gave for seeking to reduce the care of the named plaintiffs did not include all of the reasons that the City has given in the hundreds of other cases in which its decisions to reduce or terminate care have been reversed. But that does not make the named plaintiffs inadequate or atypical representatives.[13] They are "typical" because, like the class members generally, the City sought to reduce their care for unlawful reasons.

Rule 23 does not require that the facts relating to the named plaintiffs be identical to those relating to every class member. Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events[] and each class member makes similar legal arguments to prove the defendant's liability."[14] Therefore, the fact that the City sought to terminate some recipients based on the

---

[12] *Id.* ¶ 140.

[13] *Cf.* State Mem. at 13.

[14] *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007).

justification that they had become "medically unstable," does not mean that named plaintiffs cannot serve as class representatives for those recipients. The centralized actions of defendants, which I described in detail in *Strouchler I*, constitute a single "course of events." The inclusion of the words "unlawful" and "unlawfully" in the class definition ensures typicality and standing.[15]

Defendants argue that defining the scope of the class based on defendants' actions may lead to some uncertainty as to the identification of class members, but as I recently explained in *Floyd v. City of New York*, precise ascertainability of class members is unnecessary in a Rule 23(b)(2) class action. Like in that case, "[i]t would be illogical to require precise ascertainability in a suit that seeks no class damages. The general demarcations of the proposed class are clear — those people [treated] unlawfully . . . — and that definition makes the class sufficiently ascertainable for the purpose of Rule 23(b)(2)."[16] The same holds true here: it is unnecessary to determine precisely whose benefits have been unlawfully

---

[15] Plaintiffs have shown that, according to administrative law judges reviewing the City's decisions, the City has on numerous occasions made improper use of these "medically unstable" or "not self-directing" justifications. *See* Pl. Rep. Mem. at 3-4, nn.3-4.

[16] *Floyd v. City of New York*, 82 Fed. R. Serv. 3d 833, at *47 (S.D.N.Y. 2012).

terminated or reduced[17] or who has been unlawfully threatened with terminations or reductions because "final injunctive relief or corresponding declaratory relief [will be] appropriate respecting the class as a whole."[18]

Rule 23 gives district courts the power to amend class definitions or decertify classes as necessary. All counsel in this case have displayed an admirable commitment to good communication and cooperation. As the litigation proceeds, I expect that they will continue to work together and with the Court to ensure that the rights of defendants and all class members are protected.

Because the class definition, as amended by the Court, meets the requirements of Rule 23, plaintiffs' motion for class certification is granted. The Clerk of the Court is directed to close this motion [Docket No. 46]. The parties are instructed to submit letters updating the Court on the status of the notice to potential class members by November 1, 2012.

---

[17] Those individuals who have already suffered unlawful terminations or reductions may be entitled to reinstatement. The parties have sent notices to recipients who lost services and are awaiting responses. Depending on the responses that they receive, it may be necessary to identify an additional named plaintiff who lost services and can serve as class representative for that group. It may also be appropriate to identify sub-classes.

[18] Fed. R. Civ. P. 23(b).

10

SO ORDERED:

/s/ Shira A. Scheindlin
Shira A. Scheindlin
U.S.D.J.

Dated:    October 5, 2012
          New York, New York

**Appearances**

**For Plaintiffs:**

Toby Golick, Esq.
Leslie Salzman, Esq.
Cardozo Bet Tzedek Legal Services
55 Fifth Ave., 11th Floor
New York, NY 10003
(212) 790-0240

Donna Dougherty, Esq.
JASA / Legal Services for the Elderly in Queens
97-77 Queens Blvd., Suite 600
Rego Park, NY 11374
(718) 275-5352

Yisroel Schulman, Esq.
Ben Taylor, Esq.
Randal Jeffrey, Esq.
N.Y. Legal Assistance Group
7 Hanover Sq., 18th Floor
New York, NY 10004
(212) 613-5000

**For City Defendant:**

David Rosinus, Jr.
Gloria Yi
Assistant Corporation Counsel
New York City Law Department
100 Church St.
New York, NY 10007
(212) 788-8316

**For State Defendant:**

Robert Kraft
Assistant Attorney General
Office of the Attorney General for the State of New York
120 Broadway, 24th Floor
New York, NY 10271
(212) 416-8632